# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JESSIE MAE JACKSON, | ) |
| Plaintiff, | ) |
| v. | ) No. 05 C 5541 |
| JOHN E. POTTER, Postmaster General, United States Postal Service | ) |
| Defendant. | ) Wayne R. Andersen<br>) District Judge |

## MEMORANDUM, OPINION AND ORDER

This case is before the court on the motion of defendant John E. Potter, Postmaster General of the United States Postal Service, for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment under Federal Rule of Civil Procedure 56. For the following reasons, this court finds that summary judgment is the more appropriate method for considering this motion. The defendant moves for judgment because he claims the plaintiff waited too long after she was fired to initiate the Equal Employment Opportunity process. This court agrees, grants the defendant's motion, and enters judgment for the defendant.

## BACKGROUND

Plaintiff Jessie Mae Jackson worked as a casual mailhandler at the Chicago Bulk Mail Center from 1997 until she was discharged on December 31, 2004. Jackson's allegation that the Postal Service fired her because of her religious beliefs forms the basis of this lawsuit. The defendant claims he is entitled to judgment because Jackson waited more than 130 days to lodge a discrimination complaint with the Equal Employment Opportunity ("EEO") office.

Jackson received repeated information on the proper procedure, including the applicable time period, for filing a claim of discrimination. In 1997 and 1999, Jackson participated in two training sessions. (Affidavit of Phil G. Foronda, ¶ 5) Each training session included a discussion on the EEO process, the method by which the Postal Service resolves complaints arising from alleged discriminatory practices. (*Id.*, ¶ 6) At the end of the 1999 session, Jackson received a chart that notified new employees that they are required to seek EEO counseling within 45 days of any alleged discrimination. (*Id.*, ¶ 7) Additionally, EEO posters at the Chicago Bulk Mail Center stated that "any present postal employee or applicant for postal employment" who believed discrimination occurred had 45 days to bring the alleged discriminatory act to the attention of the local EEO office. (Exhibit A) The address and telephone number of the EEO office, which was located in Bedford Park, Illinois, also appeared on the poster. (*Id.*)

Despite her training sessions, employee handbooks, and EEO posters, Jackson now says she first became aware of any rights when she visited the unemployment office and received literature about discrimination. (Affidavit of Plaintiff, ¶ 33) Jackson claims that Jackie Reese, her supervisor for her first three years with the Postal Service, stated on repeated occasions that Jackson had no rights as a casual employee despite what any poster said. (*Id.*, ¶ 5) Jackson also declares that she believed notices on the poster only applied to regular, not casual, Postal Service employees. (*Id.*, ¶ 3)

After visiting the unemployment office, Jackson contacted the U.S. Department of Labor in early February 2005 to complain she was the victim of employment discrimination. In a February 14 letter, the Department of Labor told her to contact the Postal Service in Washington, D.C. Jackson sent a copy of the same complaint to the address in the letter she received from the Department of Labor, but heard nothing until she called the Postal Service in May 2005. After

making several phone calls, Jackson was told she had to file her complaint at the Bedford Park EEO Office—the same office listed on the EEO posters. She made an informal complaint of discrimination with the EEO on May 9, 2005, and filed her formal complaint on July 6.

On July 15, 2005, the Postal Service notified Jackson of its decision to dismiss the discrimination claim. Specifically, the Postal Service said that because Jackson was fired on December 31, 2004, but had not requested EEO counseling until May 9, 2005, she failed to comply with the 45-day limit. Jackson then filed this suit on October 7, 2005, seeking relief under Title VII, 42 U.S.C. § 2000e et seq.

## DISCUSSION

### I. Standard of review

In ruling on a Rule 12(b)(6) motion, if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." FED. R. CIV. PRO. 12(b). Under such a scenario, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id.* Here, both Jackson and the Postal Service have had reasonable opportunity to present such material, given that the defendant titled its motion as a "Motion to Dismiss, or Alternatively For Summary Judgment." In fact, Jackson clearly recognized this court might treat the defendant's motion as one for summary judgment, and submitted a personal affidavit in her response to the motion, as permitted by Rule 56(e). *See Smith v. Potter*, 445 F.3d 1000, 1006 n. 14 (7th Cir. 2006) (agreeing with a district court's decision to treat a similar motion as one for summary judgment).

Under Federal Rule of Civil Procedure 56, summary judgment may only be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together

3

with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. PRO. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact presents a genuine issue if it is "one on which a reasonable factfinder could find for the nonmoving party." *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997). In considering a summary judgment motion, this court views the evidence in the light most favorable to the nonmoving party. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). However, "bare allegations not supported by specific facts are not sufficient in opposing a motion for summary judgment." *Hildebrant v. Ill. Dept. of Natural Res.*, 347 F.3d 1014, 1036 (7th Cir. 2003).

## II. Jackson's Claim is Barred Because She Exceeded the Applicable 45 Day Period

Under 29 C.F.R. § 1614.105, federal employees "who believe they have been discriminated against on the basis of . . . religion [must] . . . initiate contact with a Counselor within 45 days of the date of the matter alleged to have been discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). "Failure to do so equates to the violation of a statute of limitations and, notwithstanding extenuating circumstances, would bar a federal employee from pursuing any action against the government for violation of Title VII of the Civil Rights Act of 1964." *Smith*, 445 F.3d at 1007.

Here, the record indicates that Jackson did not contact an EEO counselor until May 9, 2005, approximately 130 days after she was discharged, a fact the plaintiff does not dispute. Ordinarily, this would bar a federal court from considering her claim. However, the Supreme Court has recognized that the principles of waiver, equitable tolling, and estoppel apply to timely administrative filing requirements, a principle courts have extended to cover suits against federal

employers. *See Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982); *Rennie v. Garrett*, 896 F.2d 1057, 1059-60 (7th Cir. 1990).

### *A. Equitable Estopppel Does Not Provide a Basis For Relief*

In this case, Jackson invokes the doctrine of equitable estoppel in order to excuse her failure to contact the EEO within the applicable 45-day statutory period. Equitable estoppel, which is sometimes referred to as fraudulent concealment, "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). A decision to grant equitable estoppel, and permit the plaintiff's claim to proceed, "should be premised on a defendant's improper conduct as well as a plaintiff's actual and reasonable reliance thereon." *Wheeldon v. Monon Corp.*, 946 F.2d 533, 537 (7th Cir. 1991). Jackson meets neither of these two requirements.

With regard to the first requirement, the only basis upon which Jackson relies to support her assertion that the Postal Service improperly caused her to file an untimely complaint is the conduct of Jackie Reese, her first supervisor. The Seventh Circuit recently addressed a similar claim in *Smith v. Potter*, 445 F.3d 1000 (7th Cir. 2006). As is the case here, the district court in *Smith* had converted a motion to dismiss into a one for summary judgment to consider affidavits filed in support of the plaintiff's claim. The plaintiff argued her claim had been filed more than 45 days after she was discharged because an EEO officer told her to first complete a union grievance process before filing a complaint. She supported this claim with a personal affidavit stating, "[s]hortly after [she] was suspended, [she] telephoned the EEO office located at the USPS regarding [her] removal which [she] believed to be unfair and discriminatory." *Smith*, 445 F.3d at 1008-9. The Seventh Circuit ruled that "a declaration of this nature alone is insufficient to resist summary judgment; for it is well settled that 'self-serving statements contained in an

5

affidavit will not defeat a motion for summary judgment when those statements are without factual support in the record.'" *Id.*, at 1009 (quoting *Evans v. City of Chicago*, 434 F.3d 916, 933 (7th Cir. 2006)).

Here, Jackson's affidavit is exactly the same kind of self-serving statements the Seventh Circuit rejected as insufficient in *Smith*. In a personal affidavit, Jackson avers that Reese told her "several times that as a casual [she] had no rights." (Affidavit of Plaintiff, ¶ 5) Jackson also claims, "I had been told that casuals had no rights. The only time I learned about my EEO rights was after I went to the unemployment office after I was fired and they gave me literature about discrimination," (*Id.*, ¶ 33) and "[t]he only information I received from postal employees about my rights was that I had none." (*Id.*, ¶ 37)

These statements do not contain a reference to any time frame when Reese made the alleged statements. Nor do the statements suggest that Reese told Jackson she no rights under Title VII or with the EEO. In fact, Reese's statement is the only assertion Jackson cites to in support of her claim that the Postal Service dissuaded her from properly filing her complaint. There is no indication in Jackson's complaint, briefs, or affidavit that any Postal Service employees, including those who discharged Jackson, affirmatively took steps to prevent her from properly filing her complaint. Tellingly, when Jackson contacted various Postal Service employees in May 2005, they told her to contact the same Bedford Park EEO office listed on the posters she saw on a regular basis in the Chicago Bulk Mail Center. Such conduct hardly indicates an attempt to deceive Jackson regarding the applicable filing deadline. Accordingly, because Jackson cannot establish that the Postal Service "took active steps to prevent [her] from filing on time," *Cada*, 920 F.2d at 450, her argument for equitable estoppel must fail.

Even if Jackson's affidavit was enough to show sufficient evidence of wrongdoing, she does not demonstrate that she reasonably relied on any improper conduct. The Seventh Circuit confronted a similar argument in *Smith*, calling it "disingenuous" for the plaintiff to argue that she reasonably relied on a single telephone call when there was "an abundance of correct information [for Smith to seek out], including the various posters throughout the workplace which inform grievants of the 45-day time limit for filing an EEO complaint." *Smith*, 445 F.3d 1011. Like the plaintiff in *Smith*, the Chicago Bulk Mail Center at which Jackson worked had multiple posters informing her of the proper procedure and requirements for filing allegations of discrimination. She also received verbal and written information concerning EEO procedures at two training sessions. Nevertheless, Jackson tries to claim that she rejected the plethora of correct information she saw on a regular basis and instead relied on the comments of a supervisor that were at least four years old when the Postal Service discharged her. Under these circumstances, no reasonable factfinder could conclude that Jackson "reasonably relied" on Reese's statements. Accordingly, because Jackson does not show that the Postal Service affirmatively tried to prevent her from properly registering her claim with the EEO, and because she cannot have reasonably relied on the statements of her supervisor, equitable estoppel is inappropriate in this case.

### B. Equitable Tolling Does Not Provide a Basis For Relief

In her Response to the Defendant's Motion to Dismiss, the plaintiff occasionally uses the phrase "equitable tolling" when she means to say "equitable estoppel." The two doctrines are separate, however. *See generally Cada*, 920 F.2d 446. Whereas equitable estoppel refers to some affirmative action taken by the defendant to mislead the plaintiff into filing an untimely claim, equitable tolling "permits a plaintiff to avoid the bar of the statue of limitations if despite

7

all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada*, 920 F.2d at 451.

To the extent Jackson relies on the equitable tolling doctrine to excuse her delay in contacting the EEO, her argument does not succeed because she did not exercise due diligence in pursing her claim. Jackson waited until more than 45 days had elapsed from the day she was fired before she sent a letter to the Postal Service complaining of discrimination. By the time she finally filed her complaint with the EEO, more than five months had elapsed from the time Jackson had been informed that she would not be retained.

The only reason Jackson provides for her delay are Reese's statements that she had no rights and her mistaken belief that the EEO posters did not apply to casual employees. That rationale is rejected, for the reasons previously described. No reasonable factfinder could conclude, based on Jackson's self-serving affidavit, that she acted with due diligence in pursuing her claim given the volume of information she received informing her of the proper process. Jackson's training sessions, employee handbook, and the EEO posters in the Chicago Bulk Mail Center each described the relevant time period in which Jackson needed to file a complaint of discrimination and the proper office to contact.

Because Jackson did not contact an EEO counselor within the 45-day period, she is barred from bringing her claim. Additionally, Jackson cannot excuse her failure to bring a timely claim because the doctrines of equitable estoppel and equitable tolling are not applicable in this case. Since Jackson has failed to present this court with evidence of the existence of a genuine issue of material fact exists and since the defendant is entitled to judgment as a matter of law, summary judgment is entered in favor of the defendant.

## CONCLUSION

This court has concluded that the defendant's motion should be treated as one for summary judgment, rather than a motion to dismiss under Rule 12(b)(6). Because there is no genuine issue of material fact and because the defendant, John E. Potter, Postmaster General of the United States Postal Service, is entitled to judgment as a matter of law for the foregoing reasons, this court enters judgment in his favor.

IT IS SO ORDERED.

_____
Wayne R. Andersen
United States District Judge

Dated: AUG 2 - 2006